UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| CHELSEA LEIBERING, | ) | |
| (Social Security No. XXX-XX-9466), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:07-cv-87-RLY-WGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM DECISION AND ORDER**

**I. Statement of the Case**

Plaintiff, Chelsea Leibering, seeks judicial review of the final decision of the Commissioner which found her not disabled and, therefore, not entitled to Supplemental Security Income ("SSI") benefits under the Social Security Act ("the Act"). 42 U.S.C. § 1381(a); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 1383(c)(3).

Plaintiff received SSI benefits based on her disability as a child. (R. 13). Pursuant to Section 1614(a)(3)(H) of the Act, Plaintiff's disability was redetermined when she turned 18 years of age based on the rules for determining disability in adults. (*Id.*) On November 3, 2005, it was determined that Plaintiff was no longer disabled. (R. 28-32). That decision was upheld on reconsideration. (R. 37-48). Plaintiff then filed a request for

a hearing, and she appeared and testified before Administrative Law Judge Anne Pritchett ("ALJ") on January 19, 2007. (R. 417-49). Plaintiff was represented by an attorney; also testifying was a vocational expert and Plaintiff's mother. (R. 417). On February 7, 2007, the ALJ issued her opinion finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy. (R. 13-23). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 5-7). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on July 3, 2007, seeking judicial review of the ALJ's decision.

## II. Statement of the Facts

### A. Vocational Profile

Born August 24, 1987, Plaintiff was 18 years old at the time of the ALJ's decision and graduated high school through special education classes. (R. 422). She had no past relevant work experience. (R. 21).

### B. Medical Evidence

Plaintiff was diagnosed with Turner Syndrome in November 1996. Records indicate that she was evaluated by Erica A. Eugster, M.D., a Clinical Assistant Professor of Pediatric Endocrinology at the Indiana University School of Medicine, from August 1998 to August 2004. (R. 185-213). Dr. Eugster noted during her first visit with Plaintiff, when she was 10 years old, that Plaintiff had significant problems with attention

2

deficit hyperactivity disorder. (R. 211). On August 15, 2003, Dr. Eugster noted that Plaintiff's bipolar disorder was stable, but that an attempt to wean her off of Lithium was unsuccessful. (R. 187). By the time of Plaintiff's last visit on August 6, 2004, when she was nearly 17 years old, Dr. Eugster noted that Plaintiff "continues to have significant psychiatric problems, which even required an inpatient admission earlier this year for noncompliance with her Lithium and increased conflict at home." (R. 185).

A Teacher Questionnaire was filled out on November 15, 2004, by Jackie Mundy and Becky Julian, Plaintiff's special education instructors, during Plaintiff's junior year of high school. (R. 214-21). Plaintiff displayed very serious problems in the areas of comprehending and doing math problems, providing organized oral explanations and adequate descriptions, and expressing ideas in written forms; she also displayed serious problems in all other areas of acquiring and using information. (R. 215). Plaintiff was described as a very loud individual who likes to dominate conversations and can be verbally disruptive hourly. (R. 216). Plaintiff also displayed a slight problem in most areas of interacting and relating with others and an obvious problem in most areas of caring for herself. (R. 217, 219).

Plaintiff underwent a mental status examination by Jeffrey W. Gray, Ph.D., on February 2, 2005. (R. 237-40). Dr. Gray noted that Plaintiff's affect was fairly normal and remained stable, she was pleasant and cooperative, she was fidgety and restless, and slightly hyperactive. (R. 237). Plaintiff exhibited a mildly impaired vocabulary, normal articulation, and mildly impaired phrasing. (R. 238). Plaintiff comprehended procedural

instructions with only slight repetition and did not require any redirection. (*Id.*) Plaintiff's Wechsler Adult Intelligence Scale ("WAIS") scores revealed borderline intellectual ability with an IQ score of 75 comprised of a 71 for verbal and 83 for nonverbal abilities. (*Id.*). Dr. Gray opined that Plaintiff's premorbid general intellectual ability would have been similar to these results. (*Id.*). Furthermore, Plaintiff displayed mildly impaired verbal abstract reasoning, mildly impaired remote memory, a somewhat impaired ability to sustain attention and concentration, mildly impaired judgment and insight, mildly impaired mental flexibility, low normal to mildly impaired psychomotor speed, mildly impaired short-term memory, and mildly to moderately impaired intermediate memory. (R. 238-39). Dr. Gray explained that Plaintiff was mildly to moderately impaired in her ability to initiate social contacts, communicate clearly, cooperate, and appreciate the feelings of others; Plaintiff's ability to relate to co-workers would be likewise impaired. (R. 239). Dr. Gray confirmed diagnoses of bipolar disorder and attention deficit hyperactivity disorder, and explained that Plaintiff appeared to be responding well to medication. (R. 240). He assigned a GAF score of 55. (*Id.*).

Plaintiff attended counseling sessions with Jennifer Weisheit, MSW/LCSW, from January 13, 2004, to August 2, 2005. (R. 242-66). The last record provided indicates that Weisheit would continue providing monthly cognitive behavioral supportive therapy to Plaintiff. (R. 243).

Plaintiff underwent a mental status examination by Albert H. Fink, Ph.D., on September 30, 2005. (R. 267-70). Plaintiff was 18 years old and in the 12th grade at the

time of the examination. (R. 267). She continued to be in special education classes. (*Id.*). Plaintiff's mother reported a history of behavioral problems that began with Plaintiff's parents' divorce five years earlier. (*Id.*). Dr. Fink explained that he believed Plaintiff did not provide maximum effort during her evaluation: "She was not overtly uncooperative during the entire assessment, but there was a definite lack of involvement/engagement with frequent quick 'Don't know's' in response to questions being asked with the definite impression that Chelsea could do better than she actually did." (R. 268). Plaintiff again took the WAIS examination. (R. 269). She scored a verbal IQ of 72, performance IQ of 79, and a full scale IQ of 74. Dr. Fink noted that Plaintiff's subset test scores indicated some higher potential within the borderline range. (*Id.*). Dr. Fink's findings were that Plaintiff was alert, oriented, cognitively intact with memory, comprehension, and basic one-on-one social skills within normal limits. (*Id.*). Plaintiff exhibits borderline intellectual function with some higher potential for that range. (*Id.*). Dr. Fink opined that while Plaintiff was dealing with some emotional problems, there appeared to be considerable cognitive potential. (R. 270). Dr. Fink opined that Plaintiff had no difficulty with activities of daily living and is competent enough to acquire the skills to function independently. According to Dr. Fink, Plaintiff appeared capable of functioning in the workplace. (*Id.*). Dr. Fink assigned a GAF score of 68. (*Id.*).

On February 14, 2006, Norma Kreilein, M.D., wrote a letter chronicling a 15-year medical relationship with Plaintiff. (R. 273). Dr. Kreilein noted that Plaintiff had Turner

mosaic syndrome with cognitive delays, attention deficit disorder, bipolar disorder and had very limited insight and decision making ability. (*Id.*). Dr. Kreilein noted that Plaintiff had always been most limited in her social skills and ability to communicate. (*Id.*). It was Dr. Kreilein's opinion that Plaintiff would likely be terminated for insubordination, if she were employed, because of her tendency to easily become frustrated. (*Id.*). Dr. Kreilein noted that Turner syndrome was the source of her mental problems. (*Id.*). According to Dr. Kreilein, Plaintiff does relatively well through guidance from her mother, but is not employable. Dr. Kreilein further opined that "it would be extremely ill-advised for [Plaintiff] to be put in the position of having to fend for herself." (*Id.*). This letter was similar to a previous letter that Dr. Kreilein sent on November 29, 2004. (R. 280).

On May 12, 2006, a Physical Residual Functional Capacity Questionnaire was filled out by Dr. Eugster. (R. 378-81). Also attaching her name to the questionnaire was Dr. Kreilein. (R. 381). The form indicated that Plaintiff had a very good prognosis for her Turner syndrome. (R. 378). The two doctors opined that Plaintiff was very emotionally delayed, that she had bipolar disorder, a low borderline IQ and that it was doubtful whether Plaintiff could work a full-time job. (R. 378-79). Plaintiff has no physical limitations. (R. 379-80).

On January 11, 2007, Ms. Weisheit wrote to the Social Security Administration and opined that Plaintiff would be unable to live and work independently. (R. 383). Plaintiff's symptoms included a depressed mood including suicidal thoughts and plans, anxiety in social situations, impaired judgment and little insight, and difficulty concentrating. (*Id.*).

Weisheit further opined that Plaintiff would need assistance and guidance her entire adult life and noted Plaintiff's difficulty with money and carrying out responsibilities and tasks. (*Id.*). Weisheit indicated that Plaintiff could perform some form of work, but she would need a job coach or mentor. (*Id.*).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act. "Disability" is defined as the

7

"inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ found that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had three impairments that are classified as severe: (1) Turner mosaic syndrome; (2) borderline intellectual functioning; and (3) attention deficit hyperactivity disorder. (R. 15). The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20). Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of her limitations were not fully

credible. (R. 21). Consequently, the ALJ concluded that Plaintiff retained the RFC for light work with: (1) no interaction with the public; (2) rare interaction with supervisors; (3) a stable work setting without frequent shifts in work requirements; and (4) only minimal exercising of independent judgment. (*Id.*). The ALJ further opined that Plaintiff retained the RFC for a significant range of light work, and that Plaintiff could perform a significant number of jobs in the regional economy. (R. 22). The ALJ concluded by finding that Plaintiff was no longer disabled. (*Id.*).

## VI.  Issues

The court has examined Plaintiff's brief and concludes that Plaintiff has essentially raised two issues. The issues are as follows:

1. Whether the ALJ failed to properly address the Listings.

2. Whether the ALJ improperly disregarded vocational expert testimony.

**Issue 1:  Whether the ALJ failed to properly address the Listings.**

Plaintiff's first argument is that Plaintiff's "impairments fully meet the requirements of Listings under 112 Mental Disorders and all of its subparts . . . ." (Plaintiff's Brief With Explanation at 1). However, pursuant to 1614(a)(3)(H) of the Act, upon reaching the age of 18, Plaintiff's impairments must be re-evaluated using the standards for adult disability. Listing 112 deals with childhood mental impairments and is inapplicable to Plaintiff's situation. Furthermore, the ALJ thoroughly explained why Plaintiff did not meet Listing 112 (R. 15-17), and Plaintiff has not directed the court to medical evidence that

demonstrates that Plaintiff's impairments meet or substantially equal Listing 112 or any of its subparts. Because Plaintiff alleges that she meets Listing 112, which is only applicable to childhood disability, her claim must be dismissed.

**Issue 2: Whether the ALJ improperly disregarded vocational expert testimony.**

Plaintiff also claims that the ALJ erred by failing to find, based on the vocational expert's testimony, that there were no jobs in the regional economy that Plaintiff could perform. It is true that the vocational expert testified that Plaintiff would "probably lose her job" if she were to miss work four or more times a month. (R. 445). However, there is not substantial medical evidence in the record to support a finding that Plaintiff would be required to miss four or more days a month. Hence, the ALJ's decision to reject this particular hypothetical question was proper.[1]

---

[1] In her brief, Plaintiff also attempted to reference arguments she made before the Appeals Council. As the court explained in a previous order (Docket No. 17), "[p]erfunctory or undeveloped arguments are waived." The court gave Plaintiff the opportunity to file a new brief, but she chose not to do so. Therefore, Plaintiff has waived these arguments because she chose not to develop the arguments in her brief before the court.

## VII. Conclusion

Listing 112 is inapplicable to this determination. Additionally, the ALJ's decision to disregard a particular hypothetical question asked of the vocational expert was not improper. The ALJ's decision is supported by substantial evidence, and is, therefore, **AFFIRMED**.

**SO ORDERED** the __18th__ day of February 2009.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copy to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov


Copy to:

Joseph A. Yocum
329 Main Street
Suite 503
Evansville, IN 47708